# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

JIM E. SCUDERO,             )
                                         )

               Petitioner,        )       5:16-CV-00005 JWS
                                           )

          vs.                  )       ORDER AND OPINION
                                           )

JEFF MORAN, *et al.*,        )       [Re: Motion at docket 17]
                                           )

             Respondents.   )
_____)

## I.  MOTION PRESENTED

At docket 17, Respondents filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Petitioner filed a response at docket 24.  Respondents filed a reply at docket 27.  Oral argument was not requested and would not be of assistance to the court.

## II.  BACKGROUND

Petitioner is a member of the Metlakatla Indian Community.  The Metlakatla Indian Community is governed by a twelve-member Community Council and a mayor.  Petitioner was a candidate for mayor in November of 2015.  After he lost the election, Petitioner requested that the Community Council certify a new election based on

alleged irregularities surrounding the counting of the ballots.  The Community Council

denied the request, and Petitioner filed a case in the Metlakatla Tribal Court challenging

the validity of the November 2015 election and the Community Council's decision not to

hold a new election.  In a closed meeting in December of 2015, the Community Council

decided that it would seek costs against Petitioner in the event the tribal court found in

its favor.  The tribal judge ultimately granted the Community Council's motion to dismiss

the case, and the Community Council filed a motion with the court to collect costs

against Petitioner in the amount of $2,355.50, with a reservation to increase the amount

as needed.

Before the court ruled on the request for costs, Petitioner filed a petition for a writ

of habeas corpus, pursuant to § 1303 of the Indian Civil Rights Act ("IRCA"),[1] asking for

relief from the imposition of costs.  He asserts that he "has been effectively 'banished'

from the Community through improper and vindictive imposition of fines given to him by

the Community Council stemming from an illegal election."[2]

### III.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an

action for lack of subject matter jurisdiction. In order to survive a defendant's motion to

dismiss, the plaintiff has the burden of proving jurisdiction.[3]  Where the defendant

brings a facial attack on the subject matter of the district court, the court assumes the

---

[1]25 U.S.C. § 1303.

[2]Doc. 1 at p. 1.

[3]*Tosco v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000).

factual allegations in the plaintiff's complaint are true and draws all reasonable

inferences in the plaintiff's favor.[4]  The court does not, however, accept the truth of legal

conclusions cast in the form of factual allegations.[5]  Where the defendant brings a

factual attack—that is, where the movant challenges the substantive allegations

supporting jurisdiction—the court may consider evidence outside the pleadings to

determine whether jurisdiction exists.[6]

## IV.  DISCUSSION

"Federal courts have long recognized that Indian tribes are distinct political

entities retaining inherent powers to manage internal tribal matters."[7]  However,

Congress has abrogated some tribal immunity through the ICRA.  Section 1302 of the

ICRA extends some civil rights protections to tribe members, including equal protection

and due process rights:

> No Indian tribe in exercising powers of self-government shall . . . (8) deny to
> any person within its jurisdiction the equal protection of its laws or deprive
> any person of liberty or property without due process of law . . . .[8]

The substantive rights set forth in § 1302 are not accompanied by a federal cause of

action to remedy violations.  Rather, any private right of action under the act lies in tribal

---

[4]*Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

[5]*Id.*

[6]*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[7]*Lewis v. White Mountain Apache Tribe*, No. CV-12-8073, 2013 WL 510111, at * 4 (D. Ariz. Jan. 24, 2013).

[8]25 U.S.C. § 1302.

court.[9]  The ICRA does, however, in § 1303, make available "[t]he privilege of the writ of

habeas corpus . . ., in a court of the United States, to test the legality of his detention by

order of an Indian tribe."[10]  The term "detention" is "interpreted similarly to the 'in

custody' requirement in other habeas contexts," meaning that a petitioner under § 1303

must demonstrate "a severe actual or potential restraint on liberty."[11]  A petitioner must

also exhaust tribal remedies before bringing an ICRA habeas petition.[12]  Therefore, in

order for this court to have jurisdiction to hear Petitioner's claim for habeas relief under

§ 1303, he must be (1) in custody and (2) have exhausted all tribal remedies.[13]

Petitioner argues that imposing the costs of the underlying tribal court case on

him without due process amounts to a severe restraint on his liberty.  Indeed, "[h]abeas

relief does address more than actual physical custody."[14]  Restraint of liberty includes

parole, probation, and release on one's own recognizance pending sentencing and

trial.[15]  It can also include permanent banishment from a tribe.  In *Poodry v. Tonawanda

Band of Seneca Indians*,[16] members of the Tonawanda Band of Seneca Indians

accused members of the governing council of misconduct and then formed their own

---

[9]*Bressi v. Ford*, 575 F.3d 891, 896 n.6 (9th Cir. 2009).

[10]25 U.S.C. § 1303.

[11]*Jeffredo v. Macarro*, 599 F.3d 913, 918-19 (9th Cir. 2009).

[12]*Id.* at 918.

[13]*Id.*

[14]*Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 714 (2d Cir. 1998)

[15]*Id.*

[16]85 F.3d 874 (2d Cir. 1996).

interim tribal council.  The governing council decided that the members' actions

constituted treason, and they were stripped of their tribal memberships, told to leave

their homes, and permanently banished.  The banished members then petitioned for

writs of habeas corpus.  The Second Circuit concluded that the permanent banishment

was a sufficiently severe restraint on liberty to support federal court jurisdiction under

§ 1303.

      The Ninth Circuit examined *Poodry* in *Jeffredo v. Macarro*.[17]  In *Jeffredo*, an

enrollment committee of the Pechanga Band of the Luiseño Mission Indians disenrolled

a number of its members for failing to provide the necessary lineal eligibility, and

consequently, those members lost access to some tribal facilities and services.  The

disenrolled members petitioned for habeas relief.  Like the Second Circuit in *Poodry*,

the Ninth Circuit acknowledged that actual physical custody is not necessarily a

jurisdictional requirement for habeas review under § 1303.[18]  However, it concluded that

loss of tribal citizenship and access to certain tribal facilities and services was not

sufficiently severe to constitute detention.  The court stated that unlike the petitioners in

*Poodry*, the petitioners in *Jeffredo* had not been convicted of a crime and permanently

banished, thereby losing all rights afforded to tribal members.[19]  It noted that the

petitioners had not "been arrested, imprisoned, fined, or otherwise held by the Tribe"

and had not been evicted from their homes or had their movements on the reservation

---

[17]599 F.3d 913 (9th Cir. 2009).

[18]*Id.* at 919 (citing *Poodry* with approval).

[19]*Id.*

restricted.[20]  It noted that deprivations such as the "loss of one's 'voice' in the community, loss of health insurance, loss of access to tribal health and recreation facilities, loss of quarterly distributions to tribal members, and loss of one's place on the membership roles of the tribe" are insufficient to provide the federal court jurisdiction under ICRA's habeas provision.[21]

Given the case law and the guidance provided in *Jeffredo*, the court concludes that Petitioner has not suffered a severe restraint on his liberty.  He has not been convicted of a crime and banished from the community as in *Poodry*.  He has not been evicted from his home or had his movements restricted in some significant way.  The council's decision to seek imposition of costs after a favorable judgment pursuant to tribal ordinances is far less severe than what the Ninth Circuit deemed insufficiently severe in *Jeffredo*—denial of access to certain tribal facilities and services and disenrollment in the tribe.  Moreover, if the loss of one's "voice" in the community, health insurance, and quarterly distributions is insufficient to invoke the court's jurisdiction as the Ninth Circuit indicated it would be, surely court-imposed costs for bringing an unsuccessful case in tribal court is insufficient.

Petitioner argues that if the fine is levied against him and not paid, he could face the loss of his right to vote in Community elections.  Again, however, the loss of one's "voice" in a tribal community is insufficient to provide the necessary jurisdiction.  Even if the loss of the right to vote were considered sufficiently severe enough to constitute

---

[20]*Id.*

[21]*Id.*

-6-

detention, the court in *Jeffredo* made clear that until the severe restraint is imminent there can be no use of the habeas corpus remedy. That is, the potential threat of the loss of the right to vote is not sufficient to satisfy the detention requirement of § 1303.[22] Petitioner has not yet been denied the right to vote. Indeed, at the time of the completion of the parties' briefing, the tribal judge had not yet ruled on the council's request to impose the costs of the underlying litigation on Petitioner.

To the extent Petitioner argues that he has been subject to a fine without due process, the court finds such an argument unavailing. Indeed, while the Ninth Circuit in *Jeffredo* stated that the petitioners in that case had not been "arrested, imprisoned, fined, or otherwise held by the Tribe," clearly the imposition of court costs after unsuccessful litigation is not the equivalent of a criminal fine contemplated in the Ninth Circuit's dicta. Moreover, even a close reading of the petition itself is enough to counter Petitioner's assertion that a fine was imposed without due process. He admits in the petition that the Community Council did not impose the costs, but rather, filed a request for imposition of costs with the presiding tribal judge.[23] At the time of the parties' motion practice, no costs have been imposed on him.

Petitioner spends a good portion of his response asserting that Respondent's counsel has a conflict of interest and that his affidavit cannot be considered. The argument is irrelevant to the issue of the court's jurisdiction, and, moreover, the court

---

[22]*Jeffredo*, 599 F.3d at 919-20.

[23]Doc. 1 at ¶ 3.42

did not rely on counsel's affidavit in determining the motion to dismiss.  The petition

itself lacks sufficient allegations to warrant a finding of jurisdiction under § 1303.

In their reply, Respondents, in passing, request that the court grant them leave to

file a post-dismissal motion for attorneys' fees pursuant to Rule 11.  "[E]ven if a court

does not have jurisdiction over an underlying action, it may have jurisdiction to

determine whether the parties have abused the judicial system and whether sanctions

are appropriate to remedy such abuse."[24]  Rule 11 sanctions are imposed if the

document at issue was filed for an improper purpose or is frivolous.[25]  Respondents'

request is based on what they consider "the totally baseless nature of the Petitioner's

petition."[26]  While the Petitioner's assertion of jurisdiction is somewhat perplexing and

perhaps even frivolous for purposes of Rule 11,[27]  Respondents did not request

sanctions when they filed the motion to dismiss for lack of subject matter jurisdiction

despite the fact that they believed jurisdiction to be baseless and lacking in legal

authority at that time.[28]  The court will not provide Respondents more time to file a

---

[24]*Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1303 (9th Cir. 1990); *see also Branson v. Nott*, 62 F.3d 287, 293 (9th Cir. 1995) ("That the district court lacked subject matter jurisdiction over [the plaintiff's] complaint does not preclude it from imposing Rule 11 sanctions for filing a frivolous complaint.").

[25]*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

[26]Doc. 27 at p. 2.

[27]Under Rule 11, Petitioner should have an opportunity to be heard before the court makes a finding that would require the imposition of sanctions, and Respondents did not mention the possibility of sanctions until the filing of their reply brief, denying Petitioner any chance to respond to the allegation that the jurisdictional basis of his petition is frivolous under Rule 11.

[28]*See* Doc. 17 at p. 3.

motion for sanctions post-dismissal.  Doing so will only prolong the litigation and require briefing and more time expended from both parties and the court.

### V.  CONCLUSION

Based on the preceding discussion, Respondents' motion to dismiss at docket 17 is GRANTED.

DATED this 6th day of January 2017.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT